James A. McDevitt
United States Attorney
Eastern District of Washington
Robert A. Ellis
Assistant United States Attorney
402 East Yakima Ave., Ste 210
Yakima, WA 98901
Telephone: (509) 454-4425

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 09 2010

JAMES R. LARSEN, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          vs.

GREGORY DETLOFF

                    Defendant.

10-CR-6031-RMP-1

Plea Agreement

Rule 11(c)(1)(C)

     Plaintiff, United States of America, by and through James A. McDevitt, United States Attorney for the Eastern District of Washington, and Robert A. Ellis, Assistant United States Attorney for the Eastern District of Washington, and GREGORY DETLOFF and the Defendant's counsel, James E. Egan, agree to the following Plea Agreement:

1.     <u>Guilty Plea and Maximum Statutory Penalties</u>:

     The Defendant, GREGORY DETLOFF, agrees to plead guilty to Count 1 in the Superseding Indictment filed on June 15, 2010, charging the Defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371.

     The Defendant, GREGORY DETLOFF, understands that the charge contained in the Indictment is a Class D felony and that the maximum statutory penalty for Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371, is not more than five (5) years imprisonment; a fine not to exceed $250,000; a term

PLEA AGREEMENT - 1

1  of supervised release of not more than three (3) years; and a $100 special penalty

2  assessment.

3      The Defendant, understands that a violation of a condition of supervised

4  release carries an additional penalty of re-imprisonment for all or part of the term

5  of supervised release without credit for time previously served on post-release

6  supervision.

7  2.    The Court is Not a Party to the Agreement:

8      The Court is not a party to this Plea Agreement and may accept or reject this

9  Plea Agreement.  Sentencing is a matter that is solely within the discretion of the

10  Court.  The Defendant understands that the Court is under no obligation to accept

11  any recommendations made by the United States and/or by the Defendant; that the

12  Court will obtain an independent report and sentencing recommendation from the

13  U.S. Probation Office; and that the Court may, in its discretion, impose any

14  sentence it deems appropriate up to the statutory maximums stated in this Plea

15  Agreement.

16      The Defendant acknowledges that no promises of any type have been made

17  to the Defendant with respect to the sentence the Court will impose in this matter.

18  The Defendant understands that the Court is required to consider the applicable

19  sentencing guideline range, but may depart upward or downward under the

20  appropriate circumstances.

21      The Defendant understands that this is a Plea Agreement pursuant to Fed. R.

22  Crim. P. 11(c)(1)(C) and that the United States may withdraw from this Plea

23  Agreement if the Court imposes a lesser sentence than agreed upon.  The

24  Defendant further understands that the Defendant will have the option to withdraw

25  from this Plea Agreement if the Court imposes a sentence harsher than agreed

26  upon.

27  3.    Effect on Immigration Status:

28

PLEA AGREEMENT - 2

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

4.    Waiver of Constitutional Rights:

The Defendant, GREGORY DETLOFF, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a.    The right to a jury trial;

    b.    The right to see, hear and question the witnesses;

    c.    The right to remain silent at trial;

    d.    The right to testify at trial; and

    e.    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

5.    Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 371,

PLEA AGREEMENT - 3

1  the United States would have to prove beyond a reasonable doubt the following

2  elements:

      a.     First, beginning on or about November 1, 2001, and ending on or

           about October 26, 2005, there was an agreement between two or more

           persons to commit at least one crime as charged in the indictment;

      b.     Second, the defendant became a member of the conspiracy knowing

           of at least one of its objects and intending to help accomplish it; and

      c.     Third, one of the members of the conspiracy performed at least one

           overt act for the purpose of carrying out the conspiracy.

6.    <u>Factual Basis and Statement of Facts</u>:

        The United States and the Defendant stipulate and agree that the following

facts are accurate; that the United States could prove these facts beyond a

reasonable doubt at trial; and these facts constitute an adequate factual basis for

the Defendant's guilty plea.  This statement of facts does not preclude either party

from presenting and arguing, for sentencing purposes, additional facts which are

relevant to the guideline computation or sentencing, unless otherwise prohibited in

this agreement.

        GREGORY DETLOFF was employed as a Materials Coordinator by two of

the U. S. Department of Energy's (DOE)  Prime Contractors, Fluor Hanford (FH)

and, later, CH2M Hill Hanford Group (CHG),  at the Hanford site from

approximately November 2001through November 2005.  Part of GREGORY

DETLOFF's duties was to purchase materials for DOE Prime Contractors at the

best value for the government.

        FH and then CHG both issued credit cards (known as purchase cards or

P-cards), to GREGORY DETLOFF to facilitate the purchase equipment and

supplies. FH and CHG purchase cards were issued by JP Morgan Chase bank

which established a credit purchase procedure with FH and CHG whereby the

bank would draw down by draft or electronic funds transfer (EFT) from a line of

PLEA AGREEMENT - 4

1 | credit that the U.S. Treasury had established with U.S. Bank for DOE expenses.
2 | When a Materials Coordinator (GREGORY DETLOFF) places an order, he
3 | provides the vendor (MARTIN PEREZ of KIE) with authorization to use his P-
4 | Card number to pay for that order.  When the vendor charges the cost of that order
5 | to the P-Card, the charge is transmitted by wire communication ultimately
6 | reaching the JP Morgan credit card operation in Georgia.

7 |      Kennewick Industrial and Electrical Supply, Inc., (KIE) is a wholesale
8 | distributor of plumbing and electrical supplies, lighting fixtures,  appliances and
9 | irrigation supplies.  KIE is a registered Hanford site vendor.

10 |      From at least May 2000 through November 2005, MARTIN PEREZ was
11 | employed by Kennewick Industrial and Electrical Supply, Inc., as a salesman.  The
12 | compensation paid to MARTIN PEREZ included an annual salary as well as a
13 | 3.5% commission on all sales.

14 |      During this same time period, from approximately November 2001 through
15 | November 2005, Becky A. Detloff was the owner of Detloff Industrial (DI) which
16 | was also a registered Hanford site vendor.  DI was a small volume business
17 | operated out of the family home.  DI was a wholesale supplier of electrical and
18 | plumbing supplies.  During that period from May 2000 through November 2005,
19 | Becky Detloff was the wife of Gregory Detloff.

20 |      During his employment as a Material Coordinator, GREGORY DETLOFF,
21 | received P-Card training on August 15, 2000 and refresher P-Card training on
22 | August 22, 2003, and November 22, 2004.  GREGORY DETLOFF signed
23 | Conflict of Interest forms acknowledging he could not place orders in his capacity
24 | as a Materials Coordinator with DI.

25 |      There were well over 280 purchases made by GREGORY DETLOFF
26 | through PEREZ and KIE to DI over a four-year period.  Many were for nominal
27 | amounts.  Counts 2 through 28 in the superseding indictment consist of some of
28 | those orders which were for about $1,500 or more.

PLEA AGREEMENT - 5

In late 2005, PEREZ was interviewed by Trevor Pearson, a Department of Energy OIG agent.  He admitted the above conduct.  He was then "wired" and placed a monitored phone call to DETLOFF.  DETLOFF admitted the lunch meeting in 2001 during which this plan was all conceived and agreed to by both he and PEREZ.

7.    Waiver of Inadmissibility of Statements:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f).  This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement.  The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

8.    The United States Agrees:

a.    Dismissals:

At the time of sentencing, the United States agrees to move to dismiss Counts 2 through 29 of the Superseding indictment.

b.    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that

PLEA AGREEMENT - 6

1  the Court will determine the Defendant's applicable sentencing guideline range at

2  the time of sentencing.

3      a.    Base Offense Level:

4      The United States and the Defendant agree that the base offense level for

5  Conspiracy to Commit Wire Fraud is 6.  See U.S.S.G. §2B1.1(a)(2).

6      The United States and the Defendant agree and stipulate that the loss/gain

7  achieved in this case is between $120,000 and $200,000 in furtherance of the

8  criminal activity jointly undertaken by the Defendant and co-conspirator; this

9  amount was within the scope of the Defendant's agreement; this amount was

10  reasonably foreseeable to the Defendant in connection with the conspiracy and the

11  Defendant's relevant conduct for sentencing purposes should be calculated based

12  upon this amount, pursuant to U.S.S.G. §1B1.3.

13      b.    Specific Offense Characteristics:

14      The United States and the Defendant also agree and stipulate that the base

15  offense is increased by an additional ten (10) levels because of the loss/gain.  See

16  U.S.S.G. §2B1.1(b)(1)(F).

17      c.    Acceptance of Responsibility:

18      If the Defendant pleads guilty and demonstrates a recognition and an

19  affirmative acceptance of personal responsibility for the criminal conduct;

20  provides complete and accurate information during the sentencing process; does

21  not commit any obstructive conduct; accepts this Plea Agreement; and enters a

22  plea of guilty no later than November 9, 2010, the United States will move for a

23  three (3) level downward adjustment in the offense level for the Defendant's

24  timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

25      The Defendant and the United States agree that the United States may at its

26  option and upon written notice to the Defendant, not recommend a three (3) level

27  downward reduction for acceptance of responsibility if, prior to the imposition of

28

PLEA AGREEMENT - 7

1    sentence, the Defendant is charged or convicted of any criminal offense

2    whatsoever or if the Defendant tests positive for any controlled substance.

3           Furthermore, the Defendant agrees to pay the $100 mandatory special

4    penalty assessment to the Clerk of Court for the Eastern District of Washington, at

5    or before sentencing, and shall provide a receipt from the Clerk to the United

6    States before sentencing as proof of this payment, as a condition to this

7    recommendation by the United States.

8           Therefore, the United States and the Defendant agree that the Defendant's

9    final adjusted offense level would be 13.

10           d.    Criminal History:

11           The United States and the Defendant understand that the Defendant's

12    criminal history computation is tentative and that ultimately the Defendant's

13    criminal history category will be determined by the Court after review of the

14    Presentence Investigative Report.  The United States and the Defendant have made

15    no agreement and make no representations as to the criminal history category,

16    which shall be determined after the Presentence Investigative Report is completed.

17    10.    Departures:

18           The United States and the Defendant agree to recommend that the Court

19    depart downward from the Sentencing Guidelines by five (5) levels, to a total

20    adjusted offense level of 8.  The joint recommendation for an downward departure

21    is based upon substantial assistance.  See U.S.S.G. §5K1.1.

22    11.    Substantial Assistance:

23           The United States agrees that at sentencing it will move for a downward

24    departure in accordance with  U.S.S.G. §5K1.1 (Substantial Assistance to

25    Authorities), which provides as follows:

26           Upon motion of the government stating that the defendant has
              provided substantial assistance in the investigation or prosecution of
27           another person who has committed an offense, the court may depart
              from the guidelines.
28

PLEA AGREEMENT - 8

(a)    The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

    (1)    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

    (2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

    (3)    the nature and extent of the defendant's assistance;

    (4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

    (5)    the timeliness of the defendant's assistance.

U.S.S.G. §5K1.1(a)(1)-(5).

The Defendant acknowledges that he has not completed providing substantial assistance at the time of the entry into this Plea Agreement and that the United States is not bound to move for a downward departure unless the Defendant provides information that is fully truthful and complete and that the Defendant testifies truthfully and completely at any hearing, deposition, trial, grand jury proceeding, or other court proceeding if called as a witness by any party.

The Defendant acknowledges that if he fails to complete his efforts to provide substantial assistance by refusing reasonable requests to meet with law enforcement agents, by providing false information or withholding information from agents, or by failing to testify completely, truthfully, and honestly, the United States is under no obligation to file a motion for a downward departure pursuant to U.S.S.G. §5K1.1, and this agreement shall be considered breached and null and void. The United States may then prosecute the Defendant on all available charges, including making false statements and perjury. The Defendant also understands that his obligation to provide substantial assistance is a continuing obligation that will be a term of any sentence of probation the court may impose.

PLEA AGREEMENT - 9

1    The Defendant's obligation to provide assistance shall include the

2    investigation and prosecution or civil litigation against Kennewick Industrial &

3    Electrical Supply, Inc.; CH2M Hill Companies Ltd., and any of its subsidiaries;

4    Flour Corporation and any of its subsidiaries; and any employees, agents or former

5    employees or agents who were involved in the same scheme as charged in this

6    Superseding Indictment or similar schemes in which utilization of the P-Card is an

7    integral part of the scheme.

8    12.    Incarceration:

9        a.    Length of Imprisonment:

10    Pursuant to Fed. R. Crim. P. 11(c)(1)(C) the United States and the

11    Defendant agree to jointly recommend that the Court impose a sentence of a three

12    (3) year term of probation which is to include the following special conditions, in

13    addition to the standard conditions of probation:

14            i.    that the defendant shall serve a three (3) month term of

15                intermittent confinement in the form of work release;

16            ii.    that the defendant shall continue to provide substantial

17                assistance during the term of probation as set forth in paragraph

18                11, above.

19            iii.    that the Defendant provide financial information, provide

20                copies of Federal income tax returns and allow credit checks, at

21                the direction of the Probation Officer;

22            iv.    that the Defendant be prohibited from incurring any new debt,

23                opening new lines of credit, or enter any financial contracts or

24                obligations without the prior approval of the Probation Officer;

25                and

26            v.    that the Defendant participate and complete financial

27                counseling and life skills programs at the direction of the

28                Probation Officer.

PLEA AGREEMENT - 10

13.    <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

14.    <u>Restitution</u>:

The Defendant hereby stipulates and agrees to an order of restitution in the amount of $150,000.00

15.    <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16.    <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

18.    <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive the right to appeal the sentence if the Court imposes a term of probation no longer than three (3) years with the conditions set forth in this agreement, waives the imposition of a fine, orders restitution of no

PLEA AGREEMENT - 11

1 more than $150,000 and imposes a $100 penalty assessment.  Should the

2 Defendant successfully move to withdraw from this Plea Agreement or should the

3 Defendant's conviction be dismissed, set aside, vacated, or reversed, this Plea

4 Agreement shall become null and void; the United States may move to reinstate all

5 counts of Indictment No. 10-CR-6031-RMP-1; and the United States may

6 prosecute the Defendant on all available charges involving or arising from the

7 conduct which formed the basis for the charges contained in the Indictment.

8 Nothing in this Plea Agreement shall preclude the United States from opposing

9 any post-conviction motion for a reduction of sentence or other attack of the

10 conviction or sentence, including, but not limited to, proceedings pursuant to 28

11 U.S.C. § 2255 (writ of habeas corpus).

12 19.    <u>Integration Clause</u>:

13        The United States and the Defendant acknowledge that this document

14 constitutes the entire Plea Agreement between the United States and the

15 Defendant, and no other promises, agreements, or conditions exist between the

16 United States and the Defendant concerning the resolution of the case.  This Plea

17 Agreement is binding only upon the United States Attorney's Office for the

18 Eastern District of Washington, and cannot bind other federal, state or local

19 authorities.  The United States and the Defendant agree that this agreement cannot

20 be modified except in a writing that is signed by the United States and the

21 Defendant.

22                    <u>Approvals and Signatures</u>

23        Agreed and submitted on behalf of the United States Attorney's Office for

24 the Eastern District of Washington.

25

26 JAMES A. McDEVITT
   United States Attorney

27 _____          _11/8/10_____

28

PLEA AGREEMENT - 12

ROBERT A. ELLIS                                    Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney.  I understand and voluntarily enter into this Plea Agreement.  Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am guilty.

GREGORY DETLOFF                                    11/8/10
Defendant                                          Date

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept the Defendant's plea of guilty.

JAMES E. EGAN                                      8 NOV 2010
Attorney for the Defendant                         Date

PLEA AGREEMENT - 13